## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IGOR KOZLOV, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10-cv-03211 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ASSOCIATED WHOLESALE | ) | |
| GROCERS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ANDREI TCHIKOBAVA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10-cv-03212 |
| | ) | |
| vs. | ) | |
| | ) | |
| ASSOCIATED WHOLESALE | ) | |
| GROCERS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| PAMELA SCOTT, Personal | ) | |
| Representative of the Estate of Michael | ) | |
| E. Scott, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | 8:10-cv-03191 |
| | ) | |
| vs. | ) | |
| | ) | |
| IGOR KOZLOV, ALBATROSS | ) | |
| EXPRESS, LLC and UNICK, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Associated Wholesale Grocers, Inc.'s ("AWG") Motion to Quash and Motion for Protective Order. (Case No. 4:10-cv-03211, filing 154); Case No. 4:10-cv-03212, filing 159; Case No. 8:10-cv-03191, filing 170.)  For the reasons

explained below, AWG's Motion will be granted, in part.

## BACKGROUND

These consolidated civil cases arise out of a motor-vehicle accident between a tractor trailer driven by Michael Scott ("Scott"), deceased, and a tractor trailer driven by Igor Kozlov ("Kozlov"). Kozlov's tractor trailer was owned by Albatross Express, LLC ("Albatross"), and UNICK, LLC ("UNICK"). In his Complaint, Kozlov alleges that Scott acted negligently, thereby causing the accident which injured Kozlov. The Complaint further alleges that AWG, Scott's employer at the time of the accident and the owner of the tractor trailer driven by Scott in the accident, is liable for Scott's alleged negligence.

On February 22, 2013, Kozlov filed an Amended Notice of Deposition (the "Notice"), seeking a videotaped deposition of AWG. The Notice commands AWG to designate one or more individuals to testify on fourteen subject matters and produce documents related to ten subjects. (Case No. 4:10-cv-03211, filing 150); Case No. 4:10-cv-03212, filing 155; Case No. 8:10-cv-03191, filing 166.) AWG argues that the Notice seeks irrelevant information or information that has already been produced. AWG also claims that the discovery sought presents an undue burden and expense.

In opposition to AWG's Motion, Kozlov, Albatross and UNICK assert that the subject matters identified on the Notice only seek to obtain information regarding two general topics: (1) AGW's training and practices related to fatigued drivers, as well as accidents that may have been caused by its practices; and (2) the removal of parts from AWG's tractor and trailer and possible destruction of evidence. Kozlov and the others claim that discovery regarding these matters is relevant to AWG's possible negligence in causing the accident, as well as the question of whether AWG destroyed evidence in this case, thereby depriving Kozlov and the others of its use in this litigation.

## DISCUSSION

Generally, parties may discover relevant, non-privileged information that is reasonably

calculated to lead to admissible evidence. Fed. R. Civ. P. 26. However, a court may issue a protective order to prevent or limit discovery in order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id*. "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## I.    Deposition Designations

The Notice sets forth fourteen subject matters for deposition. These subjects are each outlined below. The Court's findings with respect to AWG's objections to the deposition designations are as follows:

### 1.    Work habits of Scott, including information concerning his personal activities, sports and physical and mental health.

AWG contends that a protective order for this designation is necessary because AWG has already produced Scott's qualification file, training file, and medical file, all of which address the subject matters identified. While this may be true, Kozlov is still entitled to question a AWG representative regarding these matters and, in particular, the information contained in the previously produced files. AWG's request for a protective order on this topic is denied.

### 2.    Information concerning an accident which Scott was involved in on January 24, 2007.

AWG contends that discovery regarding this subject matter is improper because information related to previous accidents involving Scott is irrelevant to the issues involved in this litigation. The Court disagrees. Kozlov alleges in his Complaint that Scott acted negligently, thereby causing the accident. Therefore, information related to Scott's driving history, including the 2007 accident, is relevant. Questions regarding this topic will be allowed.

3.    **Information concerning the training of drivers for night driving, driver fatigue, and safety precautions.**

Given the allegations involved in this litigation, information concerning AWG's practices, procedures, and training with respect to safety matters is relevant to the claims and defenses in this litigation. However, the scope of this deposition designation is problematic as it is overly broad. Therefore, the Court will limit inquiry into this subject matter to a period of time no earlier than three years before the accident in question and no later than one year following the accident.

4.    **Information concerning a lawsuit that occurred in Oklahoma involving an AWG driver who fell asleep at the wheel, including pleadings, depositions, and settlement information.**

Kozlov and the others argue that information related to an Oklahoma lawsuit, which resulted from a 2009 motor-vehicle accident, is relevant because evidence has arisen regarding a pattern and practice by AWG of allowing its drivers - potentially including Scott - to operate AWG vehicles while fatigued. Liberally and broadly construed, the Court finds that general information regarding the Oklahoma accident could lead to the discovery of admissible evidence. Still, the deposition designation, as outlined by Kozlov, is overly broad. Accordingly, the Court will permit Kozlov to elicit testimony regarding the general circumstances surrounding the accident, but questions regarding specific aspects of the lawsuit, including pleadings, depositions, and settlement information will be precluded.

5.    **Information concerning AWG's training program and driver fatigue problems that existed prior to the Oklahoma case and steps taken to correct any fatigue issue since that time.**

The accident involved in the Oklahoma litigation occurred in 2009. In this Order, the Court previously limited testimony regarding AWG's safety training and procedures to a time period no earlier than three years before the 2010 accident involved in this litigation. Questions regarding AWG's training program and driver fatigue problems as outlined in this request will likewise be limited in scope to three years before the accident at issue in this litigation and up to one year following the accident at issue in this litigation.

4

      **6.**      **The dispatcher, or other person in charge of the CADEC computer system on August 8-9, 2010, who had knowledge of its functions, including how the CADEC system works concerning cell phone towers.**

AWG maintains that it does not have information regarding how the CADEC system works concerning cell phone towers and cannot produce any representative to testify as to that issue. AWG claims, however, that it can produce a representative who can testify, generally, as to the operation of the CADEC system. Given AWG's proclaimed limited knowledge on this topic, in response to the Notice concerning this topic, AWG shall simply provide a representative who can testify as to the operation of the CADEC system.

      **7.**      **Safety meetings, including contents, and safety quizzes, and attendance by Scott in the two year period prior to August 9, 2010.**

While not completely clear, it appears that through this deposition designation, Kozlov seeks information regarding AWG's safety meetings and training/safety testing materials. Kozlov also seeks information concerning Scott's attendance at those meetings. This information is relevant, but the designation needs to be limited in scope. AWG claims that Scott was not present at any safety meetings. However, AWG shall nevertheless produce a representative capable of testifying as to safety meetings and training/testing materials. Questioning on this topic shall be limited to a time period no earlier than three years before the accident at issue and no later than one year following the accident.

      **8.**      **Information and records of all AWG drivers who collided with the rear of vehicles driving in the same direction, day or night, for the past 15 years, and any disciplinary matters and any lawsuits concerning the same.**

While this information is relevant, the time period outlined in the request is overly broad and burdensome. Therefore, AWG shall present a representative capable of testifying as to this subject matter, however, inquiry shall be limited in scope to a period no earlier than three years before the accident and no later than one year following the accident.

**9.    Information concerning any prior lawsuits involving Scott during the time he worked for AWG.**

AWG claims that is not aware of any prior lawsuits involving Scott. Given this, AWG is excused from providing a representative who can testify regarding this topic.

**10.    The storage and maintenance of the AWG tractor-trailer involved in this incident, and currently stored at Greenwood, NE, and, in particular, who inspected, tampered with, or in any way removed any part from either the tractor engine or the trailer brakes, when they did it, and what became of the removed or tampered parts.**

AWG does not appear to dispute the relevance of this information, but instead claims that its knowledge regarding this subject matter is limited or has already been provided. However, should Kozlov still desire, AWG shall produce a representative to testify, to the extent possible, regarding the matters outlined in this designation.

**11.    The person or persons who examined the AWG tractor-trailer, who removed said parts, the reason for the removal of said parts, and the results of any tests on the AWG tractor-trailer.**

AWG has seemingly provided Kozlov and the others with some, if not all, of the information sought through this designation. Nevertheless, should Kozlov still desire, AWG shall produce a representative to testify regarding the subjects outlined in this designation.

**12.    Information concerning Scott's employment with AWG, including information concerning Scott's employment history, Scott's duties, information concerning any prior accidents involving Scott, information concerning any disciplinary issues concerning Scott, and information concerning Scott's schedule and hours worked.**

AWG has agreed to produce a representative capable of testifying regarding the subjects outlined in this request.

6

13.     **Information concerning the equipment utilized by Scott in the course of his employment with AWG, including the make, model, and specifications of his semi-truck/tractor, whether such equipment was modified in any way and in what fashion, whether Scott's semi was repaired following the accident in the instant case and, if so, what work was performed and when.**

This information is relevant to the question of whether evidence was destroyed in this case. AWG shall produce a representative to testify regarding this subject matter, but the scope of questioning regarding this matter shall be limited to a period no earlier than three years before the accident at issue.

14.     **Information concerning safety training offered by AWG to its employees, including any such training or instruction received by Scott.**

As previously stated, information concerning AWG's practices, procedures, and training with respect to safety matters is relevant to the claims and defenses in this litigation. However, the Court will limit inquiry into this subject matter to a period of time no earlier than three years before the accident at issue in this litigation and no later than one year following the accident.

## II.     Document Requests

The Notice commands AWG to produce documents related to ten subject matters, which are outlined below. The Court's findings with respect to each of the document requests are as follows:

1.     **JJ Keller videos mentioned in the deposition of Robert Lopez.**

AWG argues that this request is vague, ambiguous, and overly broad. AWG maintains that the videos are a fourteen-part set in the JJ Keller Master Driver Services, as well as the JJ Keller CSA 2010 Guide. AWG asserts that the videos are copyright protected and, as such, AWG is unable to make copies. AWG claims that it only has one copy of the

videos and must keep the videos in its possession in order to utilize them for training purposes. AWG further notes that the videos are available on the open market for purchase.

AWG agreed to provide the videos to counsel for the parties for viewing at the offices of AWG's counsel in Kansas City, Missouri on a date mutually agreeable between the parties. This offer is sufficient. Therefore, if Kozlov and the others still desire to view AWG's copies of the identified materials, they shall do so in accordance with the proposal made by AWG.

> **2.    Records of when Scott watched the video.**

AWG represents that all records regarding Scott's viewing of the JJ Keller video series have been produced. AWG need not produce the records again.

> **3.    Records of refresher courses taken by Scott after his 2007 accident.**

AWG represents that all records regarding Scott's training have been produced. Given this representation, AWG need not provide further documents responsive to this request.

> **4.    Records of prior lawsuits or claims regarding Scott.**

AWG claims it is unaware of any prior lawsuits regarding Scott and has no documentation regarding this matter. AWG's obligation to respond to this request is satisfied.

> **5.    Records of prior lawsuits or claims involving drivers who collided with the rear of moving vehicles driving in the same direction during the past 15 years.**

Records regarding similar accidents in which AWG drivers were involved are relevant. However, this request is overly broad and unduly burdensome. It does not describe the requested documents with reasonable particularity and could potentially extend to a

voluminous amount of materials.  Accordingly, in response to this request, the Court will order AWG to identify any accidents, lawsuits, and claims involving drivers who collided with the rear of moving vehicles driving in the same direction which occurred or were asserted no earlier than three years before the accident at issue in this litigation.  If, upon identification of these accidents/claims, AWG wants additional information regarding any of these accidents/claims, it shall revise its request to identify specific categories of information or documents.  Any such request shall not, however, require production of pleadings, depositions, or information related to any settlement agreements in previous lawsuits, unless a showing of good cause is made for the production of such materials.

> **6.**    **Records concerning driver fatigue, including records of complaints, lawsuits, safety classes, attendance records, disciplinary records, and, in general, all documents concerning the subject, including those which attempt to correct a perceived problem.**

As previously stated, information regarding AWG's safety practices is relevant to the claims involved in this litigation.  However, the Court agrees with AWG that this request is overly broad and imposes an undue burden.  Therefore, in response to this request, the Court will order AWG to produce records related to claims/complaints of driver fatigue (excluding pleadings or other documents from lawsuits), as well as safety classes and disciplinary records related to driver fatigue.  AWG need not produce any materials generated earlier than three years before the accident at issue or later than one year following the accident.

> **7.**    **Reports generated concerning the matters discussed in Paragraph 1, 10 & 11.**

AWG claims it has already produced the information responsive to this request. Therefore, its obligation to respond is satisfied.

> **8.**    **Parts removed from the AWG engine and trailer.**

AWG's expert witness has the ABS module which was removed from the trailer, and AWG has agreed to allow production of that part for inspection by counsel.  AWG claims

that there are no other parts to produce.  Therefore, following inspection of the module, AWG's response to this request will be complete.

**9.    Documents and items dealing with the matters discussed in Paragraph 1, not otherwise designated.**

Paragraph 1 of the Notice asks for testimony regarding Scott's work habits, personal activities and health.   AWG maintains that it has already produced Scott's qualification file, training file, and medical file, all of which address the subject matters identified.  It is unclear what additional information is sought by this request.   Therefore, due to its lack of specificity, AWG's motion will be granted as to this request.

**10.    Health records of Scott from the time he was employed until the time of his death, including the name of his physicians, his applications for employment, and his medical examinations.**

AWG represents that the documents responsive to this request have been provided. Therefore, AWG's duty to respond to this request is satisfied.

Accordingly,

**IT IS ORDERED** that Associated Wholesale Grocers, Inc.'s Motion to Quash and Motion for Protective Order (Case No. 4:10-cv-03211, filing 154); Case No. 4:10-cv-03212, filing 159; Case No. 8:10-cv-03191, filing 170)  is granted, in part, and denied, in part, as set forth above.

**DATED May 2, 2013.**

**BY THE COURT:**

**S/ F.A. Gossett**
**United States Magistrate Judge**

10