IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IGOR KOZLOV, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10-cv-03211 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ASSOCIATED WHOLESALE | ) | |
| GROCERS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ANDREI TCHIKOBAVA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:10-cv-03212 |
| | ) | |
| vs. | ) | |
| | ) | |
| ASSOCIATED WHOLESALE | ) | |
| GROCERS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| PAMELA SCOTT, Personal | ) | |
| Representative of the Estate of Michael | ) | |
| E. Scott, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | 8:10-cv-03191 |
| | ) | |
| vs. | ) | |
| | ) | |
| IGOR KOZLOV, ALBATROSS | ) | |
| EXPRESS, LLC and UNICK, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Igor Kozlov's ("Kozlov") motions to compel discovery from Associated Wholesale Grocers ("AWG"). (Case No. 4:10-cv-03211, filing 221); Case No. 4:10-cv-03212, filing 222; Case No. 8:10-cv-03191, filing 240.) For the

reasons explained below, Kozlov's motions will be denied.

## BACKGROUND

These consolidated civil cases arise out of a motor-vehicle accident between a tractor trailer driven by Michael Scott ("Mr. Scott"), deceased, and a tractor trailer driven by Kozlov. At the time of the accident, Mr. Scott was working for AWG. Kozlov alleges that Mr. Scott acted negligently, thereby causing the accident which resulted in injuries to Kozlov.

Discovery in this case has revealed that in 1997, during his employment with AWG, Mr. Scott sustained a head injury in a motor vehicle accident. Kozlov maintains that following the 1997 accident, Mr. Scott pursued a workers' compensation claim against AWG and, during the course of his claim, was examined by Dr. Brent Koprivica. Dr. Koprivica issued a report on April 29, 1999, stating that Mr. Scott sustained "a basilar skull fracture, depressed left frontal skull fracture and right frontal supraoribital fracture" in the 1997 accident. (Case No. 4:10-cv-03211, filing 223-2.) Dr. Koprivica was not, however, Mr. Scott's treating physician. Rather, Dr. Koprivica's examination was completed as an independent evaluation for purposes of the workers' compensation claim.

Mr. Scott starting taking the seizure medication Dilantin prophylactically following the 1997 accident, although no direct seizure activity was documented during Mr. Scott's hospitalization or in subsequent testing. (Case No. 4:10-cv-03211, filing 223-5.) According to Dr. Koprivica's 1999 report, it had been "recommended to [Mr. Scott] that he remain on Dilantin indefinitely." (Case No. 4:10-cv-03211, filing 223-2.) Because Mr. Scott was taking Dilantin, his DOT card was not renewed.[1] As a result of his inability to drive, AWG transferred Mr. Scott to a job as a warehouseman, and later to another position within the

---

[1] Under the federal regulations in effect at the time, a driver was ineligible for a DOT card while taking Dilantin and remained ineligible for two years after having stopped taking the drug. (Case No. 4:10-cv-03211, filing 223-4.) It is unclear when Mr. Scott stopped taking Dilantin.

company. In 2006, following a physical examination, Dr. Wakwaya certified[2] Mr. Scott to return to commercial driving and Mr. Scott resumed his driving activities for AWG. During his 2006 examination with Dr. Wakwaya, Mr. Scott indicated that he had sustained a head injury about 10 years earlier. Dr. Wakwaya's examination did not, however, reveal any neurological deficit.[3] (Case No. 4:10-cv-03211, filing 229-2.)

In 2007, Mr. Scott was involved in another accident while in the course of his employment with AWG. The 2007 accident involved a rear-ended collision, like the accident at issue in this litigation.

Kozlov has moved the Court to compel AWG to answer certain interrogatories, document production requests and requests for admission. In particular, Kozlov wants more information[4] about Mr. Scott's two previous accidents, Mr. Scott's treatment, and what AWG knew about his medical condition prior to allowing him to return to work as a commercial driver.

## DISCUSSION

Under the federal rules, parties to a lawsuit may obtain discovery regarding any matter, not privileged, that is relevant to a claim or defense of any party. Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Moses v. Halstead*, 236 F.R.D. 667, 671 (D. Kan. 2006) (footnote omitted).

---

[2] Dr. Wakwaya performed the DOT examinations of Mr. Scott in 2006, 2008 and 2009. (Case No. 4:10-cv-03211, filing 229-2.)

[3] There is no evidence that Mr. Scott had taken Dilantin in the five years before the 2006 exam.

[4] Kozlov has obtained Mr. Scott's medical records pertaining to the 1997 accident.

Kozlov's discovery requests primarily seek information about Mr. Scott's workers' compensation claim following the 1997 accident. Kozlov contends that information concerning workers' compensation benefits is relevant because it shows the nature, severity and scope of treatment Mr. Scott received following the 1997 accident, as well as what AWG knew, or should have known, concerning Mr. Scott's condition prior to releasing him to drive. AWG claims that the discovery requests constitute an improper fishing expedition because Kozlov has no proof that the injuries sustained by Mr. Scott in the 1997 accident have any relationship to the accident involved in this case. AWG also argues that the requests seek irrelevant and, at times, privileged information.

Requests for Admission ("RFA") Nos. 6, 7, and 8 generally ask for an admission that AWG or its attorney received particular medical records during the pendency of Mr. Scott's workers' compensation claim. For instance, RFA No. 6 requests that AWG admit that "the report from TAS, M.D. dated January 27, 1999 . . . was received by AWG's agent or attorney during the course of the workers' compensation claim against AWG." (Case No. 4:10-cv-03211, filing 223-1.) AWG objects to these RFAs, asserting that they seek information protected by the attorney client and/or work product privilege. AWG further argues that the requests are overly broad and seek irrelevant information.

The Court agrees with AWG that these RFAs, as written, could plausibly include information protected by the attorney-client privilege, which shields from discovery confidential communications between an attorney and client made for the purpose of facilitating the rendition of legal services. In any event, it is unclear to the Court how information related to AWG's receipt of a particular medical report during the workers' compensation claim is relevant to the claims in this litigation. What AWG knew about Mr. Scott's medical condition in 1999 has no bearing on what AWG knew about Mr. Scott's condition when he was re-certified and returned to driving in 2006. Prior to his DOT re-certification in 2006, 2008, 2009 and 2010, Mr. Scott was examined by a physician, who declared Mr. Scott fit to return to driving. During his 2006 medical examination, Mr. Scott informed Dr. Wakwaya that he had sustained a previous head injury and there is no evidence that Mr. Scott was taking Dilantin before the exam or the years thereafter. Moreover, Dr. Wakwaya's examination did not reveal that Mr. Scott had any neurological impairments.

4

RFA Nos. 9, 10, and 11 ask AWG to admit that certain medical records are true and accurate representations of the opinions contained therein. For example, RFA No. 9 asks that AWG admit that "the medical report written by TAS, M.D. dated January 27, 2009 . . . is a true and accurate representation of the opinion of TAS, M.D. and that said opinion was presented to AWG in connection with the workers' compensation case against said carrier." (Case No. 4:10-cv-03211, filing 223-1.) AWG objects to these RFAs on the basis that they seek medical opinions that it is unqualified to give. AWG further asserts that the information requested is privileged, overly broad and immaterial.

Kozlov's motions to compel will also be denied as to these RFAs. The Court finds that AWG cannot opine as to whether medical records are accurate representations of the opinions contained in the reports. This information should be sought from the physicians who prepared the reports, not AWG.

Respectively, Interrogatory Nos. 1 through 5 request that AWG (1) identify the lawyers who represented AWG in the workers' compensation case; (2) state the amount of medical expenses Mr. Scott incurred as a result of the workers' compensation case, and the amount paid by AWG; (3) state whether AWG was self-insured for the workers' compensation claim and, if not, to state the name of the insurer and the policy number; (4) state the amount of each payment for compensation benefits made to Mr. Scott for the workers' compensation case; and (5) identify all pleadings and orders in the workers' compensation case. (Case No. 4:10-cv-03211, filing 223-1.) AWG contends that these Interrogatories are vague and seek irrelevant information.

The Court finds that the information sought by these Interrogatories is irrelevant to the claims involved in these consolidated actions. The identity of AWG's attorneys in the worker' compensation claim and information pertaining to AWG's insurer at the time has no relationship to the medical issues upon which Kozlov seeks discovery or upon any other matter in this litigation. Similarly, the amounts paid to Mr. Scott as a result of the workers' compensation claim have no connection to this suit. Kozlov already has Mr. Scott's medical records, and information regarding the amounts paid to Mr. Scott for his 1997 injuries has no bearing on what AWG knew about Mr. Scott's condition in 2006 when he was re-examined by a doctor and allowed to resume his driving activities.

Document Production Request No. 1 seeks the production of all documents presented to AWG in connection with the workers' compensation case involving Mr. Scott. Document Production Request No. 2 asks that AWG produce all documents identified in the Interrogatories. (Case No. 4:10-cv-03211, filing 223-1.) AWG claims that the information sought by Request No. 1 is shielded by the attorney client privilege and seeks irrelevant information. AWG maintains that with the exception of the additional information sought through its present motion to compel, it has already provided a full response to Request No. 2. For the reasons explained above, the Court agrees with AWG that the information sought through Request No. 1 could encompass privileged information and that, in any event, the information sought is immaterial. In light of the Court's rulings in this Order, AWG has provided a sufficient response to Request No. 2.

Accordingly, for the reasons explained above,

**IT IS ORDERED** that Kozlov's motions to compel (Case No. 4:10-cv-03211, filing 221); Case No. 4:10-cv-03212, filing 222; Case No. 8:10-cv-03191, filing 240) are denied.

**DATED March 11, 2014.**

                                              BY THE COURT:

                                              **S/ F.A. Gossett**
                                              **United States Magistrate Judge**