## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IGOR KOZLOV, | MEMORANDUM AND ORDER |
| Plaintiff, | |
| vs. | CASE NO. 4:10CV3211 |
| ASSOCIATED WHOLESALE GROCERS, INC., A Kansas Corporation; PAMELA SCOTT, Personal Representative of the Estate of Michael E. Scott, Deceased; ROADTEX TRANSPORTATION CORP; ROADTEX CORP - BAYONNE, NJ; ROADTEX CORP - COLTS NECK, NJ; ROADTEX LOGISTICS, LLC; and ROADTEX TRANSPORTATION MANAGEMENT CORP; | |
| Defendants. | |
| ANDREI TCHIKOBAVA, | CASE NO. 4: 10CV3212 |
| Plaintiff, | |
| vs. | |
| ASSOCIATED WHOLESALE GROCERS, INC., A Kansas Corporation; PAMELA SCOTT, Personal Representative of the Estate of Michael E. Scott, Deceased; ALBATROSS EXPRESS, LLC; ROADTEX TRANSPORTATION CORP; ROADTEX CORP - BAYONNE, NJ; ROADTEX CORP - COLTS NECK, NJ; ROADTEX LOGISTICS, LLC; and ROADTEX TRANSPORTATION MANAGEMENT CORP; | |
| Defendants. | |
| PAMELA SCOTT, Personal Representative of the Estate of Michael E. Scott, Deceased, | CASE NO. 8: 10CV3191 |
| Plaintiff, | |
| IGOR KOZLOV; ALBATROSS EXPRESS, LLC; UNICK, LLC; ROADTEX TRANSPORTATION CORP; ROADTEX CORP - BAYONNE, NJ; ROADTEX CORP - COLTS NECK, NJ; ROADTEX LOGISTICS, LLC; and ROADTEX TRANSPORTATION MANAGEMENT CORP; | |
| Defendants. | |

This matter is before the Court on the Motion for Partial Summary Judgment ("Motion") (Case No. 4:10-cv-3211, Filing No. 218) filed by Igor Kozlov ("Kozlov") and Albatross Express, LLC ("Albatross") against Associated Wholesale Grocers ("AWG"). For the reasons discussed below, the Motion will be denied.

## BACKGROUND

These consolidated civil cases arise out of a motor-vehicle accident (the "Accident") involving a tractor trailer driven by Michael E. Scott ("Scott"), deceased, and a tractor trailer driven by Kozlov. The Motion was filed in the lead case, 4:10-cv-3211. AWG filed a claim[1] against Kozlov and Albatross seeking damages for injuries allegedly resulting from the Accident. AWG alleges that at all relevant times (1) Kozlov was an employee of Albatross; (2) Kozlov was acting in the ordinary course of his employment, as an agent, servant, or employee of Albatross; and (3) Kozlov was operating the tractor-trailer with the permission and knowledge of Albatross. Albatross admits each of these allegations.

As part of this consolidated action, Kozlov, Andrei Tchikobava ("Tchikobava"), and Albatross all have asserted claims against AWG seeking damages for injuries resulting from the Accident. Kozlov, Tchikobava, and Albatross have all alleged that, at all relevant times AWG's driver, Scott, was employed by AWG and operating a tractor trailer within the scope and course of his employment. AWG admits that Scott was acting within the course and scope of his employment with AWG at the time of the Accident.

---

[1] In its Answer and Counterclaim (Filing No. 13), AWG labeled its claims against Kozlov and Albatross as a counterclaim. At the time AWG filed its Answer and Counterclaim, Albatross was not a party to the action, 4:10-cv-3211. Pursuant to Fed. R. Civ. P. 14, Albatross is more accurately defined as a Third-Party Defendant rather than a Counterclaim Defendant.

On February 3, 2014, Kozlov and Albatross filed their Motion, requesting that the Court "dismiss any claims of direct liability against Albatross for negligent hiring, entrusting, or training, or any claims arising from violation of federal regulations."[2] (Motion at ¶ 6.) Kozlov and Albatross further request that the Court "declare that AWG may only proceed on its claim of vicarious liability." (*Id.*) Kozlov and Albatross base their requests for relief on the grounds that Albatross admits and acknowledges it is vicariously liable for any negligent acts of Kozlov.

In their "counterclaim," AWG and Scott present three separate counts which are captioned:

**Count I:**    Defendant/Counterclaimant Pamela Scott's Wrongful Death Claim Against Plaintiff Igor Kozlov

**Count II:**    Defendant/Counterclaimant Pamela Scott's Negligence Claim Against Plaintiff Igor Kozlov

**Count III:**    Defendant Associated Wholesale Grocers' Counterclaim Against Plaintiff Igor Kozlov.

(Filing No. 13 at ECF 1-8.)

While these captions do not identify a claim made by AWG against Albatross, they are subheadings under the heading "Counterclaim Against Plaintiff Igor Kozlov and Albatross Express, LLC: General Allegations." (*Id.* at ECF 3.) In substance, Count III actually contains claims against both Kozlov and Albatross for damages sustained as a

---

[2] Albatross and Kozlov are both asking the Court to dismiss claims against Albatross. However, because Kozlov is not a party to the claims for which he seeks dismissal, there is no case or controversy with respect to Kozlov and he does not have standing to seek dismissal of those claims. *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 933 (8th Cir. 2012).

result of the Accident. (*Id.*)  In Count III, AWG asserts claims against Albatross based on several theories of liability.

## SUMMARY JUDGMENT STANDARD OF REVIEW

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Servs., Inc.*, 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)). The court will view "all facts in the light most favorable to the nonmoving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.*, 655 F.3d 811, 819 (8th Cir. 2011). "[W]here the nonmoving party will bear the burden of proof at a trial on a dispositive issue . . . Rule 56(e) permits proper summary judgment motion to be opposed by any kind of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden of the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts

showing that there is a genuine issue for trial.'"  *Torgeson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)  (quoting *Matsushita*, 475 U.S. at 586–87)), *cert. denied*, 132 S. Ct. 513 (2011). "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In other words, in deciding "a motion for summary judgment, 'facts must be viewed in a light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'"  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Otherwise, where the court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"— where there is no "'genuine issue for trial'" —summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## DISCUSSION

Sitting in diversity, this Court must "apply state substantive law and federal procedural law." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 437 (2010) (quoting *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996)) (internal quotation marks omitted). "As a federal court, [the court's] role in diversity cases is to interpret state law, not to fashion it." *Kingman v. Dillard's, Inc.*, 643 F.3d 607, 615 (8th Cir. 2011) (quoting *Orion Fin. Corp. of S.D. v. Am. Foods Grp., Inc.*, 281 F.3d 733, 738 (8th Cir.2002) (internal quotation marks omitted). "[A] federal district court sitting in Nebraska must follow Nebraska's conflict of laws rules." *Modern*

5

*Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 858 F.2d 1339, 1342 (8th Cir. 1988)

(citing *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496 (1941)).

Nebraska has adopted Restatement (Second) of Conflicts of Law § 146 (1971)[3]

which provides:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

In this case, the Accident and the alleged injuries occurred in Nebraska, and the Court must apply Nebraska law.

A plaintiff in a civil case may assert a number of causes of action against a tortfeasor or other responsible party potentially liable for his injury. Nebraska courts apply the doctrine of respondeat superior which holds an employer "vicariously liable for the negligent acts of an employee committed while the employee was acting within the scope of the employer's business." *Kocsis v. Harrison*, 543 N.W.2d 164, 168 (Neb. 1996). Under Nebraska law, employers also may be liable for the acts of an employee under a direct negligence theory if the employer was negligent in hiring, supervising, or training an employee. *See Kime v. Hobbs*, 562 N.W.2d 705, 713 (Neb. 1997).

AWG has alleged that Albatross is liable for damages AWG sustained as a result of the Accident under several theories, including respondeat superior liability. Albatross has admitted that at all relevant times Kozlov was acting as an employee of Albatross within the scope of Albatross's business. Therefore, as a matter of law, Albatross is

---

[3] *Malena v. Marriott Int'l, Inc.*, 651 N.W.2d 850, 856 (Neb. 2002).

vicariously liable for Kozlov's negligence, if any. Likewise, AWG is vicariously liable for Scott's negligent acts committed at the time of the Accident, if any.

In addition to *respondeat superior* liability, AWG has alleged that Albatross is directly liable to AWG because Albatross was negligent and reckless in hiring Kozlov, entrusting Kozlov with the tractor-trailer, and failing to train, instruct, supervise, and monitor Kozlov. AWG also has alleged that Albatross negligently violated federal regulations. Pointing to its own admission of responsibility under the doctrine of *respondeat superior*, Albatross argues that AWG's direct-negligence claims against Albatross should be dismissed as duplicative and prejudicial.

In response to Albatross's arguments, AWG acknowledges that Nebraska has not decided this issue, and AWG agrees that most state courts that have addressed this issue support Albatross's position.  AWG also states:

> AWG agrees with [Albatross] that the majority view is the more well-reasoned position, and believes that the majority view would be adopted by the Nebraska courts. AWG respectfully requests that this court adopt the majority view which holds that claims for negligent hiring, training, retention, entrustment and any other claim based on imputed liability, are not proper when the employer is otherwise vicariously liable for the acts of the employee.

(AWG Br., Filing No. 230 at 5.) AWG requests that the Court "issue an Order stating that claims for negligent hiring, training, retention, entrustment and any other claim based on imputed liability, are not proper when the employer is otherwise vicariously liable for the acts of the employee." (*Id.*)[4]

---

[4] Although not expressly stated in a motion or brief, AWG also appears to be asking the Court for relief with regard to direct negligence claims against AWG. To the extent that AWG is asking the Court to dismiss claims against *it*, the request is denied for the reason's stated in this Memorandum and Order.

7

The Nebraska Supreme Court has not decided the issue of whether direct-negligence claims, such as claims for negligent hiring, entrustment, or training, should be dismissed when the employer has admitted responsibility for the acts of an employee under respondeat superior. Where an issue has not been decided by the Nebraska Supreme Court, this Court is presented with the task of predicting how the Nebraska Supreme Court *would* decide the issue. *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). The Court may look "to relevant state precedent, analogous decisions, considered dicta, and any other reliable data," to decide how the Nebraska Supreme Court would determine the issue. *Id.* "[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." *Kingman*, 643 F.3d at 615 (quoting *Ashley Cnty.*, 552 F.3d at 673) (internal quotation marks omitted).

The only support the parties provide for their mutual conclusion is law from *other* jurisdictions, that are split on the issue. Albatross and AWG both urge this Court to follow the view expressed by the Supreme Court of Missouri in *McHaffie By & Through McHaffie v. Bunch*, 891 S.W.2d 822 (Mo. 1995). In *McHaffie*, the court stated, "The majority view is that once an employer has admitted *respondeat superior* liability for a driver's negligence, it is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability." 891 S.W.2d at 826.

The reasoning supporting this view is that once respondeat superior liability is admitted, "[t]he liability of the employer is fixed by the amount of liability of the employee." *Id.* In *McHaffie*, the court reasoned that to allow the evidence to support other claims of negligence against the same person "serves no real purpose. The

8

energy and time of courts and litigants is unnecessarily expended. In addition, potentially inflammatory evidence comes into the record which is irrelevant to any contested issue in the case." *Id.* The court acknowledged that this rule may not be properly applied "when an employer or entrustor may be held liable on a theory of negligence that does not derive from and is not dependent on the negligence of an entrustee or employee" and when "an employer or an entrustor may be liable for punitive damages which would not be assessed against the employee/entrustee." *Id.*; *see also Meherg v. Pope*, 2013 WL 5934143, at *16 (W.D. Ky 2013); *Southard v. Belanger,* LP, 2013 WL 4499016, at *15 (W.D. Ky 2013); *Hackett v. Washington Metropolitan Area Transit Authority*, 736 F.Supp. 8, 11 (D.D.C. 1990).

A number of courts disagree with the view expressed in *McHaffie,* and have held that it is *not* proper to dismiss other theories of negligence when the employer has admitted responsibility under *respondeat superior,* because claims based on direct and indirect negligence theories are entirely separate causes of action. *See e.g.*, *James v. Kelly Trucking Co.*, 661 S.E.2d 329, 331-32, 33 (S.C. 2008); *Fairshter v. American Nat. Red Cross*, 322 F.Supp.2d 646, 654 (E.D. Va. 2004); *Marquis v. State Farm Fire and Cas. Co.*, 961 P.2d 1213, 1222 (Kan. 1998).

In *James*, the United States District Court for the District of South Carolina certified the question regarding whether "South Carolina law prohibit[s] a plaintiff from pursuing a negligent hiring, training, supervision, or entrustment claim once respondeat superior liability has been admitted" to the Supreme Court of South Carolina. 661 S.E.2d at 330. The Supreme Court of South Carolina held that it did not prohibit plaintiffs from pursing such claims because they are independent, direct causes of

9

action against employers, while claims based on *respondeat superior* theory are derived from an employee's liability. *Id.* The court reasoned that, "it is a rather strange proposition that a stipulation as to one cause of action could somehow 'prohibit' completely the pursuit of another." *Id.* at 332.

The defendant in *James* argued that the court should dismiss independent causes of action against it to protect the jury from considering prejudicial evidence. *Id.* at 331. In response to this argument, the Supreme Court of South Carolina stated that a trial court is tasked with crafting instructions "describing what a jury may or may not infer from a particular piece of evidence," and the "court system relies on the trial court to determine when relevant evidence is inadmissible because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Id.* at 331, 332. The court concluded that,

> the argument that the court must entirely preclude a cause of action to protect the jury from considering prejudicial evidence gives impermissibly short-shrift to the trial court's ability to judge the admission of evidence and to protect the integrity of trial, and to the jury's ability to follow the trial court's instructions.

*Id.* at 331.

The parties have not provided any Nebraska law nor have they provided any expressed Nebraska policy supporting a finding that the Nebraska Supreme Court would apply the rule in *McHaffie*. Neither can the Court find any indication as to which view Nebraska courts would adopt.

Even if this Court were to conclude that the *McHaffie* rule likely would be adopted by the Nebraska Supreme Court, the parties have failed to address the exceptions discussed in that case. Although punitive damages do not appear to be at issue here,

10

the parties have not discussed whether any of the claims against employers are independent of the negligence of an employee. The parties have also failed to brief the implications of dismissing any claims arising under federal regulations.[5] While the parties appear to agree on their preference for the application of the doctrine expressed in *McHaffie*, and the parties could stipulate to the dismissal of direct-negligence claims if they wished, they cannot stipulate as to what the law is in Nebraska. The Court is not persuaded that the Nebraska Supreme Court would prohibit a plaintiff from pursuing independent claims for negligent hiring, training, supervision, or entrustment, once an employer's responsibility under *respondeat superior* has been established. The Court declines to expand the law in Nebraska in ways not foreshadowed by state precedent by applying *McHaffie.*

## CONCLUSION

Because this Court is not persuaded that the Nebraska Supreme Court would prohibit a plaintiff from pursuing independent claims for negligent hiring, training, supervision, or entrustment, once a defendant has admitted responsibility under *respondeat superior*; and because it is within the power of the parties to move to dismiss such direct-negligence claims against the employer defendants if they so wish; this Court will decline the parties' joint suggestion that the Court expand the law in Nebraska by applying precedents from other jurisdictions to effect the dismissal of such direct-negligence claims in this case.

---

[5] "A party's failure to brief an issue raised in a motion may be considered a waiver of that issue." NECivR 7.1(a)(1)(A).

11

Accordingly,

**IT IS ORDERED**, Kozlov and Albatross's Motion for Partial Summary Judgment (Case No. 4:10-cv-3211, Filing No. 218) is denied.

Dated this 18th day of April, 2014.

BY THE COURT:


s/Laurie Smith Camp
Chief United States District Judge