IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IGOR KOZLOV,<br><br>    Plaintiff,<br><br>vs.<br><br>ASSOCIATED WHOLESALE GROCERS, INC., A Kansas Corporation; and PAMELA SCOTT, Personal Representative of the Estate of Michael E. Scott, Deceased;<br><br>    Defendants. | MEMORANDUM AND ORDER<br><br>CASE NO. 4:10CV3211<br><br>LEAD CASE |
| ANDREI TCHIKOBAVA,<br><br>    Plaintiff,<br><br>vs.<br><br>ASSOCIATED WHOLESALE GROCERS, INC., A Kansas Corporation; PAMELA SCOTT, Personal Representative of the Estate of Michael E. Scott, Deceased; and ALBATROSS EXPRESS, LLC;<br><br>    Defendants. | CASE NO. 4: 10CV3212<br><br>MEMBER CASE |
| PAMELA SCOTT, Personal Representative of the Estate of Michael E. Scott, Deceased,<br><br>    Plaintiff,<br><br>vs.<br><br>IGOR KOZLOV, ALBATROSS EXPRESS, LLC, and UNICK, LLC;<br><br>    Defendants. | CASE NO. 8: 10CV3191<br><br>MEMBER CASE |

This matter is before the Court on three Motions for Partial Summary Judgment filed by Plaintiff Andrei Tchikobava ("Plaintiff Tchikobava" or "Tchikobava") (Filing No. 308 in Case No. 4:10cv3212); Plaintiff Igor Kozlov ("Plaintiff Kozlov" or "Kozlov") (Filing No. 333 in Case No. 4:10cv3211); and Defendants Associated Wholesale Grocers, Inc.

("AWG"), and Pamela Scott ("Pamela"), personal representative of the estate of Michael Scott ("Scott"), (collectively "Defendants") (Filing No. 338 in Case No. 4:10cv3211; Filing No. 342 in Case No. 4:10cv3212; Filing No. 358 in Case No. 8:10cv3191).  For the reasons that follow, the motions will be denied.

## BACKGROUND

These consolidated civil cases arise out of a motor-vehicle collision (the "Accident") involving a tractor trailer driven by Scott, and a tractor trailer driven by Kozlov.  Unless otherwise indicated, the following facts were presented in the parties' briefs and supported by pinpoint citations to admissible evidence in the record.  The parties have admitted these facts, or have not controverted them as required by NECivR 56.1[1] and Fed. R. Civ. P. 56.

### The Accident

During the early morning hours of August 9, 2010, at approximately 1:00 a.m., a tractor trailer operated by Scott ran into the rear of a tractor trailer operated by Kozlov.  Tchikobava, a passenger in the vehicle operated by Kozlov, was asleep at the time of the Accident.  Scott died as a result of the Accident.   At the time of the Accident, Scott was an agent and employee of AWG, and Kozlov and Tchikobava were employees of

---

[1] "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(b)(1).  "Nebraska's rule concerning summary judgment procedure places clear requirements on the moving and opposing parties." *Tramp v. Associated Underwriters, Inc.*, 13-2546, 2014 WL 4977396 (8th Cir. Oct. 7, 2014).  Under NECivR 56.1(a)(1) and (2), the moving party "'must include in the brief in support of the summary judgment motion a separate statement of material facts,' that 'consist[s] of *short* numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph.'" *Id.* (quoting NECivR 56.1(a)(1),(2)).  Plaintiff Tchikobava did not comply with this rule.  The Court also notes that Plaintiff Kozlov did not file a reply brief in support of his Motion; therefore, properly referenced facts in Defendants' Brief in Opposition to Kozlov's motion are deemed admitted for purposes of this memorandum and order.

Albatross Express, LLC ("Albatross"). The vehicle operated by Kozlov was traveling westbound on Interstate 80. The roadway was flat. Nebraska State Troopers investigating the crash testified that the weather was clear. The headlights of the AWG truck were in good working order.

On the day before the Accident, August 8, 2010, Kozlov and Tchikobava left Hillside, New Jersey, at midnight Eastern Standard Time. Before leaving, they inspected their truck and trailer. Tchikobava drove from Hillside to the Indiana/Illinois state line, and then to a warehouse in Romeoville, Illinois. Kozlov was driving when they left the warehouse in Romeoville.

On the night before the Accident, Michael Scott reported to work at approximately 9:00 p.m. He had not worked during the prior for 33 hours. Before receiving keys to his truck, Scott reported to his dispatcher who ensured Scott was fit to drive. Scott then received information about his trip, and the keys to his truck.

After the Accident, Kozlov was interviewed by Nebraska State Troopers. Kozlov told the troopers he had been driving between 60 and 65 miles per hour when the Accident occurred. Kozlov later testified under oath that he was traveling at 60 to 65 miles per hour at the time of the Accident.[2] The Nebraska State Highway Patrol Investigation Report ("NSP Report") concluded that Kozlov was driving westbound on Interstate 80 at approximately 15 to 19 miles per hour. The posted minimum speed limit was 40 miles per hour. The NSP Report also stated that Scott was traveling at or

---

[2] Defendants represent that Kozlov was convicted of providing false information to the Nebraska State Patrol with regard to the Accident. ((Filing No. 374 at ECF 5 ¶ 14) (citing *State of Nebraska v. Igor Kozlov*, Case No. CR 11-50 (Seward County District Court).)

near 70 miles per hour. Defendants' expert witnesses concluded that Kozlov was driving at approximately 13.5 miles per hour at the time of the accident.

The lead accident reconstructionist for the Nebraska State Highway Patrol ("NSP"), Trooper Nabegh Pedram, testified that the Accident was "all Kozlov's fault." Neal Tranthem, one of the state troopers at the scene of the Accident who was actively engaged in the investigation, did not find any skid marks on the pavement prior to the point of impact.  The NSP Report concluded that Kozlov was the primary cause of the collision and that no evidence was identified to suggest any wrong doing by Scott. Trooper Trantham testified that all officers agreed with the conclusions contained in the NSP Report.

## Albatross

Albatross is no longer in business. Albatross was owned by Vladimir Chen ("Chen").  Chen operated Albatross out of his home.  Albatross never employed more than six drivers at one time.  Prior to the Accident, Albatross had been cited for failing to have the appropriate reflective tape on the rear of its trailers.  Albatross was also cited several times for maintenance violations of Department of Transportation regulations with regard to the company's trailers. On January 5th or 6th, 2010, an Albatross trailer was inspected by the Federal Motor Carrier Safety Administration and found to have inoperable lights. On April 8, 2010, an Albatross trailer was cited for reflective tape inadequacies.  On July 4, 2010, an Albatross trailer was cited for inoperative stop lamps and inadequate reflective materials on the rear.  On July 14, 2010, an Albatross trailer was cited for inoperable lamps.

<u>Kozlov</u>

Kozlov obtained a Commercial Motor Vehicle Operator's License from the State of New York in 2009. Kozlov was employed by Albatross as an over-the-road driver in July of 2010. Kozlov's first truck driving trip with Albatross was the first trip he had taken where there was not an experienced driver sitting next to him in the cab of the truck at all times. When Chen hired Kozlov, he was looking for inexperienced drivers. Chen wanted to give an employment opportunity to drivers who could not get a job elsewhere. After hiring Kozlov, Chen gave him a road test in a parking lot, but never took him out on a public road or highway. The road test involved one trip around the lot. Albatross did not provide its new drivers with any written training materials, nor did it provide Kozlov with any training before he was allowed to operate a truck.

## STANDARD OF REVIEW

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "Summary Judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n. 2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S.Ct. 513 (2011)) (internal quotations omitted). In reviewing a motion for summary judgment, the court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper

summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe*, 690 F.3d at 1011 (quoting *Torgerson*, 643 F.3d at 1042) (internal quotations omitted). "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (quoting *Torgerson*, 643 F.3d at 1042) (internal quotations omitted). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial" and summary

judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)) (internal quotations omitted).

## DISCUSSION

I.     Defendants' Motion for Partial Summary Judgment

Defendants filed their Motion in all three cases in this consolidated action. (Filing No. 338 in Case No. 4:10cv3211; Filing No. 342 in Case No. 4:10cv3212; Filing No. 358 in Case No. 8:10cv3191). Defendants' Motion does not identify the specific parties to which it applies, but refers to "plaintiffs." Because three individual cases are consolidated, the language in the Motion is confusing. It appears from the record that Plaintiff Tchikobava did not respond to Defendants' Motion, perhaps because he believed the Motion was directed at Plaintiff Kozlov, who filed a brief responding to multiple motions, including Defendants' Motion for Partial Summary Judgment. Regardless of which plaintiff or plaintiffs the Motion was intended to address, the Court concludes that summary judgment should not be granted.

Defendants seek dismissal of "any claim by plaintiffs that Michael Scott was not medically qualified to drive under the Federal Motor Carrier Safety Regulations, and the accident was caused by fatigue or any other medical condition on the part of Michael Scott, or that he fell asleep." (Filing No. 338 at ECF 2 in Case No. 4:10cv3211; Filing No. 342 at ECF 2 in Case No. 4:10cv3212; Filing No. 358 at ECF 2 in Case No. 8:10cv3191.) Defendants acknowledge, however, that neither Plaintiff Kozlov nor Plaintiff Tchikobava has asserted any claim that Scott was not medically qualified to drive under the Federal Motor Carrier Safety Regulations, that the accident was caused by fatigue or any other medical condition on the part of Scott, or that he fell asleep.

7

Defendants state that they moved for summary judgment because of assertions made by plaintiffs during discovery. Yet, neither Plaintiff Kozlov nor Plaintiff Tchikobava amended his complaint to include such claims. To the extent that Defendants filed their Motion in an effort to keep irrelevant evidence from being admitted at trial, their concerns may be addressed through objections to specific evidence offered at trial, or through motions in limine.

II.     Plaintiff Tchikobava and Plaintiff Kozlov's Motions for Partial Summary Judgment

Plaintiff Tchikobava filed a Motion for Partial Summary Judgment asserting that Defendant AWG is "liable for any damages caused to Plaintiff Tchikobava as a result of the collision on August 9, 2010, for the reason that there is no evidence of any efficient intervening cause, as defined by Nebraska law, and Plaintiff is entitled to judgment on liability as a matter of law." (Filing No. 309 at ECF 2 in Case No. 4:10cv3212.) Thereafter, Plaintiff Kozlov filed his Motion for Partial Summary Judgment requesting that the Court find that Defendants were negligent as a matter of law and that Defendants' negligence was a proximate cause of the collision which injured Plaintiff Kozlov. Both Plaintiff Tchikobava and Plaintiff Kozlov rely on the range of vision rule.[3]

Under Nebraska law,[4] to recover in a negligence action, a plaintiff must prove the following elements: "[1] a legal duty owed by the defendant to the plaintiff, [2] a breach

---

[3] Defendants have asserted several defenses to the plaintiffs' negligence claims, including the defense of contributory negligence. Plaintiff Tchikobava has argued that Neb. Rev. Stat. § 48-101 *et seq.* and *Brown v. American Tel. & Tel. Co.*, 560 N.W.2d 482 (Neb. 1997) stand for the principle that Plaintiff Tchikobava's "'exclusive remedy' is against AWG and Michael Scott." (Filing No. 367 at ECF 3 in Case No. 4:10cv3212; Filing No. 362 at ECF 3 in Case No. 4:10cv3211; Filing No. 382 at ECF 3 in Case No. 8:10cv3191.) Neb. Rev. Stat. § 48-101 *et seq.* and *Brown*, 560 N.W.2d 482 concern workers' compensation claims. Plaintiffs had no employee/employer relationship with AWG or Scott, and the principles set out in Neb. Rev. Stat. § 48-101 *et seq.* and *Brown* do not apply to bar Defendants' affirmative defenses.

[4] The parties do not dispute that Nebraska law applies to this case.

8

of such duty, [3] causation, and [4] damages." *Martensen v. Rejda Bros., Inc.*, 808 N.W.2d 855, 861-62 (Neb. 2012).  Generally, the second and third elements, breach and causation, are questions for the jury.  *A.W. v. Lancaster Cnty. Sch. Dist. 0001*, 784 N.W.2d 907, 913 (Neb. 2010); *Heatherly v. Alexander*, 421 F.3d 638, 642 (8th Cir. 2005).

    Nebraska applies the range of vision rule, however, whereby elements two and three are met as a matter of law when a person driving an automobile at night fails to drive "in such a manner that he can stop in time to avoid a collision with an object within the area lighted by his headlights . . . ." *Mantz v. Cont'l W. Ins. Co.*, 422 N.W.2d 797, 802 (Neb. 1988).  "Strict application of the range of vision rule as a matter of law is inappropriate where a reasonable dispute exists on the question of whether the operator of a vehicle exercised the requisite care and prudence under the circumstances." *Stinson v. City of Lincoln*, 617 N.W.2d 456 (Neb. App. 2000).  The range of vision rule does not apply "where the object cannot be observed by the exercise of ordinary care in time to avoid a collision." *Mantz*, 422 N.W.2d at 802.  Also, under the sudden stop doctrine, "a following driver need not anticipate that a motorist will suddenly stop or slow on a roadway." *McFadden v. Winters & Merch., Inc.*, 603 N.W.2d 31, 38 (Neb. App. 1999) (citing *Martin v. Roth*, 970, 568 N.W.2d 553, 554 (Neb. 1997)).

    Defendants do not argue that Kozlov came to a sudden stop; however, they dispute Kozlov's assertions regarding the visibility of his trailer.  Kozlov argues that his trailer was discernable with the exercise of ordinary care.  Defendants note that the rear lights and the rear door of the trailer pulled by Kozlov were destroyed in the Accident.  Scott died in the accident and could not testify about the visibility of Kozlov's trailer.  The

parties also dispute the following material facts: whether Kozlov's lights were operational at the time of the Accident; whether the rear door on Kozlov's trailer was made of stainless steel; whether the rear door, if made of stainless steel, was clean enough to reflect light from Scott's headlights; and whether the rear door had adequate reflective tape. The record contains evidence that Kozlov was driving as slow as 13.5 miles per hour in an area where the minimum posted speed limit was 40 miles per hour. Defendants claim that Scott was driving at a consistent speed of 70 miles per hour and that he should have been able to see objects in the roadway in front of him if they were discernable. Defendants argue that the collision itself is evidence that Kozlov's tractor trailer was indiscernible from the roadway.

Because genuine issues of material fact remain, the Court cannot apply the range of vision rule to find negligence on the part of Defendant AWG as a matter of law. Based on the evidence in the record, a reasonable finder of fact could determine that Kozlov's tractor was not observable by a driver approaching from behind and exercising ordinary care. Because both plaintiffs' motions depend on the Court applying the range of vision rule, Plaintiff Tchikobava's Motion for Partial Summary Judgment and Plaintiff Kozlov's Motion for Partial Summary Judgment will be denied.

### III.    Defendants' Motion to Strike the Affidavit of Dr. John Larson

Defendants filed a Motion to Strike the Affidavit of Dr. John Larson. (Filing No. 392 in Case. No. 4:10cv3211). The Court did not rely on the Affidavit of Dr. Larson in ruling on these motions. Accordingly, the Defendants' Motion to strike will be denied as moot.

## CONCLUSION

For the reasons stated in this memorandum and order, the parties' motions for partial summary judgment will be denied. Defendants' Motion to Strike the Affidavit of Dr. John Larson will be denied as moot. Accordingly,

**IT IS ORDERED:**

1. Plaintiff Andrei Tchikobava's Motion for Partial Summary Judgment (Filing No. 308 in Case No. 4:10cv3212) is denied;

2. Plaintiff Igor Kozlov's Motion for Partial Summary Judgment (Filing No. 333 in Case No. 4:10cv3211) is denied;

3. Defendants' Motion for Partial Summary (Filing No. 338 in Case No. 4:10cv3211; Filing No. 342 in Case No. 4:10cv3212; Filing No. 358 in Case No. 8:10cv3191) is denied; and

4. Defendants' Motion to Strike the Affidavit of Dr. John Larson (Filing No. 392 in Case. No. 4:10cv3211) is denied as moot.

Dated this 20th day of October, 2014.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge